IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CEDRIC LAMON JACKSON, ) <br> ID # 02121315, ) <br> Petitioner, ) <br> ) <br> vs. ) <br> ) <br> DIRECTOR, Texas Department of Criminal ) <br> Justice, Correctional Institutions Division, ) <br> Respondent. ) | No. 3:19-CV-1621-L-BH <br><br><br> Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Based on the relevant filings and applicable law, the *Petition for a Writ of Habeas Corpus by a Person in State Custody*, received on July 5, 2019 (doc. 1), should be **DENIED** with prejudice.

## I.   BACKGROUND

Cedric Lamon Jackson (Petitioner), an inmate currently incarcerated in the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), challenges his January 6, 2017 conviction and life sentence in Case No. F-1524931-N in the 195th Judicial District Court of Dallas County, Texas. (*See* doc. 1 at 2.)[2] The respondent is the Director of TDCJ-CID (Respondent). (*See id.* at 1.)

**A.   State Court Proceedings**

On July 18, 2016, Petitioner was indicted for causing serious bodily injury to a child with a deadly weapon in Cause No. F-1524931-N in the 195th Judicial District Court of Dallas County, Texas. (*See* doc. 14-19 at 4, 12.) He was convicted of the charged offense by a jury on December

---

[1] By *Special Order No. 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

5, 2016.  (*See id.* at 5, 11.)  After hearing arguments and testimony during the punishment phase of the proceedings, the trial court sentenced Petitioner to life imprisonment in the TDCJ-CID on January 6, 2017.  (*See id.* at 12.)  On appeal, the state appellate court modified the judgment to show that the correct date of the offense was October 17, 2015; as modified, the judgment was affirmed.  (*See* doc. 14-5); *Jackson v. State*, No. 15–17–00065–CR, 2017 WL 4930381 (Tex. App.—Dallas Oct. 31, 2017, no pet.).  Petitioner did not file a petition for discretionary review (PDR) with the Texas Court of Criminal Appeals.  (*See* doc. 11-1 at 2.)

Petitioner's habeas counsel filed a state habeas application in the trial court on November 30, 2018.  (*See* doc. 14-19 at 18-35.)  Petitioner's trial counsel submitted an affidavit in response to the ineffective assistance of counsel claims in the state habeas application.  (*See id.* at 112-14.)  In its findings of fact, the trial court found that trial counsel was trustworthy, and that the statements in his affidavit were worthy of belief.  (*See id.* at 99.)  It found that counsel's statements were true, correct, and dispositive of the allegations in Petitioner's habeas application, and concluded that relief was not merited on the ineffective assistance of counsel claims.  (*See id.* at 99-107.)  It also concluded that Petitioner was not entitled to relief on his claim under the Fourth Amendment.  (*See id.* at 107-09.)  The Texas Court of Criminal Appeals denied Petitioner's state habeas application without written order on the findings of the trial court without a hearing on July 3, 2019.  (*See* doc. 14-18); *Ex parte Jackson*, No. WR-89,813-01 (Tex. Crim. App. July 3, 2019).

**B.**     **Substantive Claims**

The § 2254 petition raises the following grounds:

(1) [Petitioner] was denied the effective assistance of counsel at trial;

(2) The state's use of cell-site location information without a warrant violated the Fourth Amendment.

(doc. 1 at 6.)  Respondent filed a response on October 7, 2019.  (*See* doc. 11.)  Petitioner did not

2

file a reply.

## II.    APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1214, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). As for the "unreasonable application" standard, a writ may issue "if the state court identifies the correct governing legal principle from [the Supreme] Court's

decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). A petitioner must show that "there was no reasonable basis for the state court to deny relief." *Id.* at 98.

A federal district court must be deferential to state court findings supported by the record. *See Pondexter v. Dretke*, 346 F.3d 142, 149-52 (5th Cir. 2003). The AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. 685, 693 (2002) (citing *Williams*, 529 U.S. at 403-04). A state application that is denied without written order by the Texas Court of Criminal Appeals is an adjudication on the merits. *See Singleton v. Johnson*, 178 F. 3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (en banc) (holding that a denial signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits).

Section 2254(d)(2) concerns questions of fact. *See Moore v. Johnson*, 225 F.3d 495, 501

(5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

In his first ground, Petitioner contends that counsel rendered ineffective assistance at trial. (*See* doc. 1 at 6.)

The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. It guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 697. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see Williams*, 529 U.S. at 393 n.17 (recognizing that the inquiry focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

### A. Mental Health Evidence

Petitioner contends that counsel was ineffective because he "failed to develop and present mental health evidence supporting [Petitioner's] steadfast insistence that he did not commit the offense." (doc. 1 at 6.) He argues that "only against the backdrop of [Petitioner's] mental health history – particularly, his prior diagnosis of post-traumatic stress disorder – would his flight from [the crime scene] have made any sense." (doc. 3 at 11.) He states that, "[w]ithout evidence showing the jury that [Petitioner] suffered from post-traumatic stress disorder, the defense's attempts to explain [Petitioner's] flight from [the crime scene] as the result of 'shock' rang hollow." (*Id.* at 13.)

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. To establish ineffective assistance of counsel based on a failure to investigate, "a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005). Petitioner appears to allege that during the guilt-innocence phase of the trial, counsel should have presented evidence

6

of the following to the jury: (1) Dr. Michael Pittman's psychiatric evaluation of Petitioner, which included a finding that Petitioner had "a potentially severe mental illness, most probably major depressive disorder, recurrent, mild" and concluded that he was competent to stand trial; (2) traumatic events from his childhood, including that he was raped by a family friend and that his mother died in his arms; (3) his military background and honorable discharge following an attempted suicide; and (4) testimony from his wife about a PTSD diagnosis. (doc. 14-19 at 77; *see also* doc. 3 at 11-13.) He also complains that despite counsel's designation of Dr. Kristi Compton as a mental health expert for the defense, neither Dr. Compton nor any other mental health expert testified at trial on behalf of the defense. (*See* doc. 3 at 12.)

> In response to Petitioner's claim in the state habeas proceedings, counsel's affidavit stated:
>
> From my early interviews with [Petitioner], he indicated he had suffered from depression and attempted suicide in his military career (1996 – 2005) resulting in an honorable discharge. Military records indicated he had symptoms of major depressive disorder and marital discord from failed marriages. These records indicated that he never served in combat during his military service. With [Petitioner] continuing to pursue his story of the events in significant contradiction to the identification by both victims in the assaults, I requested Dr. Michael Pittman to review the medical records and advise on the competence of [Petitioner]. These results were that [Petitioner] was competent. To explore the issue of possible post-traumatic stress disorder (PTSD), I provided medical records and case information to Dr.[ ]Kristi Compton for analysis. I planned to use her as witness [sic] in the trial but her result was that [Petitioner] did not suffer from PTSD and that his version of the facts in such detail indicated he was aware of his actions. [Petitioner] testified as to his version of the facts, which the jury apparently did not believe.
>
> . . .
>
> [Petitioner's] mental condition both present and past was thoroughly explored and found to be of no benefit in his defense.

(doc. 14-19 at 113-14.) The habeas court concluded that "[t]rial counsel here made a reasonable investigation into possible mental health issues affecting [Petitioner], including PTSD. Trial counsel's decision not to present evidence of possible PTSD was objectively reasonable in light

7

of the evidence of the experts' opinions." (*Id.* at 105.) It also concluded that Petitioner failed "to show that there is a reasonable probability that the result of this proceeding would have been different with the presentation of a possible PTSD diagnosis." (*Id.*)

Petitioner fails to allege any facts showing how the alleged evidence of depression, traumatic childhood events, or a prior attempted suicide demonstrate that he suffered from PTSD or "support[ ] [Petitioner's] steadfast insistence that he did not commit the offense." (doc. 1 at 6.) Nor does he allege any facts or evidence beyond conclusory allegations and hearsay statements showing a PTSD diagnosis of which counsel was or should have been aware and offered at trial. (*See* doc. 3 at 13.) He also has failed to allege facts or evidence to demonstrate prejudice, i.e., a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Accordingly, Petitioner has not shown that counsel was ineffective based on a failure to develop or present mental health evidence, or that the state court's rejection of the claim was unreasonable. *See id.*; *Miller*, 200 F.3d at 282 ("conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding."); *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."). The claim should be denied.

**B.  Failure to Object**

Petitioner contends that counsel was ineffective because he "failed to object to the admission of evidence and testimony regarding [Petitioner's] cell-site location information, in violation of the Fourth Amendment." (doc. 1 at 6; *see also* doc. 3 at 15.) He argues that "under prevailing Supreme Court precedent, such an objection would have been sustained and the evidence would have been excluded." (doc. 3 at 15-16.) Petitioner cites *Riley v. California*, 573

U.S. 373 (2014), and *Carpenter v. United States*, 138 S. Ct. 2206 (2018), in connection with his claim. (*See id.* at 14-15.)

In *Riley*, the Supreme Court held that the Fourth Amendment requires law enforcement to obtain a warrant "before searching a cell phone seized incident to an arrest." *Riley*, 573 U.S. at 403. In *Carpenter*, which was decided approximately 1.5 years after Petitioner's trial, the Supreme Court held that the government's "acquisition of wireless carrier cell-site records revealing the location of [the defendant's] cell phone whenever it made or received calls" constituted "a search within the meaning of the Fourth Amendment." *Carpenter*, 138 S. Ct. at 2214, 2220. As such, the government "must generally obtain a warrant supported by probable cause before acquiring such records." *Id.* at 2221.

Here, counsel's affidavit in response to this claim in the state habeas proceedings stated:

> [Petitioner] testified that he left the scene of the assaults after fighting off the alleged attacker and checking that his girlfriend victim and her son were alive and breathing. [Petitioner] admitted driving back to his mother in law [sic] in Kentucky and then deciding to come back to Dallas. The cell-site location information served to verify [Petitioner's] story as to his travels and thus lend credibility to his testimony. This evidence was not objected to at trial because it served to bolster [Petitioner's] testimony.

(doc. 14-19 at 113-14.) The record shows that the state obtained business records from Petitioner's wireless carrier for his cell phone data from the morning of the date of the offense, October 17, 2015, through October 18, 2015, pursuant to a search warrant issued by the trial court and executed on October 28, 2015. (*See* doc. 14-19 at 90-97.) At trial, an FBI agent testified about his review of the wireless carrier's business records for Petitioner's cell phone for the period of October 17-18, 2015, to determine the approximate location of his cell phone based on data recorded when there was a call or a text message. (*See* doc. 14-14 at 78-82, 86-90.) The records for Petitioner's cell phone and the FBI agent's analysis of the data were introduced and entered into evidence

9

without objection. (*See id.* at 79-82.)

Because the record establishes that the cell-site location information was obtained pursuant to a search warrant from records provided by Petitioner's wireless carrier, and not from a warrantless seizure of his cell phone incident to his arrest, the holdings of *Riley* and *Carpenter* are distinguishable from and applicable to Petitioner's circumstances.[3] He has failed to identify a legal basis upon which counsel could have objected to the cell-site location information or to show that the objection would have been sustained and the evidence excluded. Because counsel is not deficient for failing to make a futile or meritless objection, Petitioner has failed to satisfy the first prong of *Strickland*. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999); *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point."). Even assuming for purposes of this petition only that Petitioner had made such a showing, he has failed to allege any facts or evidence to demonstrate prejudice under *Strickland*. He therefore has not shown that counsel was ineffective or that the state court's rejection of this claim was unreasonable. The claim should be denied.

## IV. FOURTH AMENDMENT

In his second ground, Petitioner contends that the "state's use of cell-site location information without a warrant violated the Fourth Amendment." (doc. 1 at 6.)

It is well-settled that a claim that evidence obtained through an unconstitutional search and seizure was erroneously admitted at trial cannot be a basis for federal habeas relief if the state

---

[3] As discussed, *Carpenter* was not decided until approximately 1.5 years after Petitioner's trial. Because "counsel is normally not expected to foresee future new developments in the law," he is not ineffective for failing to object to the cell-site location information at trial, even if that holding were applicable to Petitioner. *Nelson v. Estelle*, 642 F.2d 903, 908 (5th Cir. 1981); *see also Green v. Johnson*, 116 F.3d 1115, 1125 (5th Cir. 1997) ("there is no general duty on the part of defense counsel to anticipate changes in the law."); *Cooks v. United States*, 461 F.2d 530, 532 (5th Cir. 1972) ("Clairvoyance is not a required attribute of effective representation."). To the extent Petitioner relies on *Carpenter* to support his ineffective assistance of counsel claim, the claim fails, and he has failed to show that the state court's rejection of it was unreasonable. The claim should also be denied on this basis.

provided an opportunity for a full and fair litigation of the Fourth Amendment claim. *Williams*, 529 U.S. at 375; *Stone v. Powell*, 428 U.S. 465, 482 (1976). If a state has a process that allows an opportunity for full and fair litigation of Fourth Amendment claims, federal habeas review of those claims is barred, even if a defendant did not use the state process to litigate the claims. *Register v. Thaler*, 681 F.3d 623, 628 (5th Cir. 2012); *Moreno v. Dretke*, 450 F.3d 158, 167 (5th Cir. 2006). The State of Texas has a process that allows defendants to litigate Fourth Amendment claims at the trial level and on direct appeal. *Register*, 681 F.3d at 628. The Fifth Circuit has also stated that a Fourth Amendment claim has been fully and fairly litigated in state court where the material facts were adequately developed in state court and there is no "undeveloped evidence sufficient to call into question the reliability of the state court's determination[.]" *Andrews v. Collins*, 21 F.3d 612, 631 (5th Cir. 1994) (quoting *Streetman v. Lynaugh*, 812 F.2d 950, 958 (5th Cir. 1987)) (internal quotation marks omitted).

Here, Petitioner's Fourth Amendment challenge was not addressed at the trial level. He did raise this issue at the state habeas level, however, and it was denied on the merits. (*See* doc. 14-19 at 25, 53-55; doc. 14-18); *Ex parte Jackson*, No. WR-89,813-01 (Tex. Crim. App. July 3, 2019). He has not alleged any undeveloped facts sufficient to call into question the reliability of the state court's determination. Because this issue was fully and fairly litigated at the state habeas level, it is therefore barred from federal habeas review. Accordingly, Petitioner's second ground should be denied.

## V.  EVIDENTIARY HEARING

Petitioner requests a live evidentiary hearing "to resolve the controverted, previously unresolved factual issues presented." (doc. 1 at 7.) Upon review of the pleadings and the proceedings held in state court as reflected in the state court records, an evidentiary hearing appears

unnecessary. Petitioner has not shown he is entitled to an evidentiary hearing.

## VI. RECOMMENDATION

The *Petition for a Writ of Habeas Corpus by a Person in State Custody*, received on July 5, 2019 (doc. 1), should be **DENIED** with prejudice.

**SIGNED this 1st day of April, 2022.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE